## COMMONWEALTH *vs.* JAMES P. FAHERTY.

No. 01-P-1212.

Suffolk. November 7, 2002. - January 16, 2003.

Present: PORADA, LENK, & COWIN, JJ.

*Destruction of Property. Wanton or Reckless Conduct.*

The evidence at a criminal trial was sufficient to convict the defendant of wanton destruction of property under $250 in violation of G. L. c. 266, § 127, where, when the defendant put two pennies wrapped in paper into a parking meter, he did so for the purpose of putting the meter out of order and was indifferent to whatever havoc he was wreaking upon the meter's inner workings. [152-154]

COMPLAINT received and sworn to in the Boston Municipal Court Department on August 29, 2000.

The case was heard by *Sally A. Kelly,* J.

*Jennifer H. O'Brien* for the defendant.

*Seema Malik Brodie,* Assistant District Attorney, for the Commonwealth.

LENK, J. The defendant was charged with wanton destruction of property over $250 in value in violation of G. L. c. 266, § 127. After a jury-waived trial, he was convicted of the lesser included offense of wanton destruction of property under $250 in value and was thereafter fined and assessed counsel fee and victim-witness fund payments. He appeals, claiming error in the judge's denial of his motion for a required finding of not guilty. We affirm.

*The Commonwealth's case.* The charge against the defendant arises from his alleged tampering with a public parking meter. The Commonwealth called three witnesses, two of whom were Boston police officers assigned to do undercover parking meter surveillance for the Boston transportation department, while the third was an employee of that department who oversees the city's parking meter division.

On July 28, 2000, at approximately 7:30 A.M., the two police officers began their surveillance in the area of Marginal Road between Washington and Harrison Streets, an area of Boston where parking meter vandalism had been a recurring problem. The vandalism would occur by way of the insertion of foreign objects other than coins into the meters in order to render them inoperable. Before beginning surveillance, the officers cleared all of the meters on both sides of Marginal Road of any foreign objects,[1] and the meters were all thereby rendered fully operational; the meters had also been cleared by other transportation department employees the previous day. While this approximately one-hour long clearing process was being done by one officer, the other watched for anyone tampering with any of the cleared meters.

At approximately 9:20 A.M., the officers saw the defendant park a grey BMW automobile near a meter that had been cleared but not yet used that morning. The meter was an electronic two-hour meter that took only quarters; each quarter permitted fifteen minutes of parking. The defendant stayed in his car until 9:25 A.M. or 9:30 A.M. He then got out and went to the meter, looked at it, inserted a "foreign object," and, after remaining at the meter longer than what one of the officers thought was the normal period of time, walked away.

Thirty seconds after the defendant walked away, the officer who was about five or six car lengths away from the meter walked up to it and saw that it read "out of order." He then indicated to the other officer that he should bring the defendant back to the meter where the first officer had remained. This was done, and after the defendant was shown their police badges, one officer opened up the meter in the defendant's presence, informed him that it was out of order and that there was a foreign object in it that had not been there before, and removed two pennies wrapped in paper from the meter's inner mechanism. There were no other coins or foreign objects in the

---

[1]This "clearing" process involved the officer's going to each meter, whether operable or not, unlocking the back of it with a special key, taking out the mechanism, clearing it of any foreign object, putting at least two quarters in the meter to make sure it was working, resetting the meter, putting the mechanism back in, and locking the meter. A meter that was inoperable read "out of order."

meter. The defendant was told that he would be charged with the destruction of property. The defendant became agitated, stating that he had tried without success to put quarters in the meter. The officers cleared and reset the meter; the process of making it operable again took several minutes.

*Analysis.* On appeal, the defendant contends that because the Commonwealth failed to prove both that there was an "injury" to the meter and that the defendant's behavior was "wanton," it was error to deny his motion for a required finding of not guilty.

We begin with G. L. c. 266, § 127,[2] which speaks to the destruction or injury of personal property. The statute distinguishes between those acts of destruction or injury that are done wilfully and maliciously and those that are done wantonly; the former are punished more severely than the latter, and wanton destruction or injury of property is not a lesser included offense of wilful and malicious destruction or injury of property. *Commonwealth* v. *Redmond,* 53 Mass. App. Ct. 1, 5 (2001). If the value of the property wantonly injured or destroyed does not exceed $250, the punishment is less severe than if it exceeds that amount. Here, there was no proof offered of the parking meter's value, and the judge determined that the conviction

---

[2]General Laws c. 266, § 127, states in pertinent part as follows:

"Whoever destroys or injures the personal property, dwelling house or building of another in any manner or by any means not particularly described or mentioned in this chapter shall, if such destruction or injury is wilful and malicious, be punished by imprisonment in the state prison for not more than ten years or by a fine of three thousand dollars or three times the value of the property so destroyed or injured, whichever is greater and imprisonment in jail for not more than two and one-half years; or if such destruction or injury is wanton, shall be punished by a fine of fifteen hundred dollars or three times the value of the property so destroyed or injured, whichever is greater, or by imprisonment for not more than two and one-half years; if the value of the property so destroyed or injured is not alleged to exceed two hundred and fifty dollars, the punishment shall be by a fine of three times the value of the damage or injury to such property or by imprisonment for not more than two and one-half months; provided, however, that where a fine is levied pursuant to the value of the property destroyed or injured, the court shall, after conviction, conduct an evidentiary hearing to ascertain the value of the property so destroyed or injured."

would be for wanton destruction or injury of property that did not exceed $250. The correctness of this ruling is not before us. On appeal, the defendant claims the evidence did not establish the crime at all insofar as it did not prove that the meter had been injured or that the defendant had acted wantonly.

In determining "what . . . transforms an injurious act into wanton conduct," *Commonwealth* v. *Ruddock*, 25 Mass. App. Ct. 508, 512 (1988), we said that it was "a spirit of indifference or recklessness, perhaps even arrogance and insolence, but not cruelty, revenge, or hostility." *Id.* at 512-513. We went on to say that "[i]n the absence of a likelihood of substantial injury, conduct is neither wanton nor reckless for purposes of establishing criminal responsibility," but cautioned that "whether conduct can be deemed wanton or reckless does not turn on the degree of the injury in fact inflicted. Criminal responsibility is imposed on the basis of the intentional doing of an act with an awareness of the probability that the act will result in substantial damage. That the injury turns out to be minor or insignificant is a matter of luck which is irrelevant to the question of the defendant's conduct." *Id.* at 513 (citations omitted). See *Commonwealth* v. *Armand*, 411 Mass. 167, 171 (1991) ("Wanton destruction differs substantially from wilful and malicious destruction in that wanton destruction requires only a showing that the actor's conduct was indifferent to, or in disregard of, probable consequences").

The defendant maintains that, because the parking meter was successfully cleared and rendered operational within a matter of minutes, the meter sustained no permanent damage and required no replacement parts, and therefore, the "temporary blockage" that the defendant caused was not really an "injury." Indeed, there was never any real likelihood, he argues, that a substantial injury would be caused by inserting two pennies wrapped in paper into a parking meter, and any indifference he displayed by his conduct was to the prospect of, at most, slight injury; his conduct, then, cannot be considered "wanton." Otherwise put, it is the defendant's view that the conduct at issue is simply too insignificant to be deemed criminal.

While we have no quarrel with the proposition that criminal responsibility should not attach to trivial misconduct, we are not

persuaded that "no harm, no foul" fairly describes what happened here. Despite the quite literally small change nature of the transaction (putting two pennies in a meter to save, at most, two dollars) and the negligible amount of time that the meter was actually out of commission, neither is dispositive of the matter.

When the defendant decided to put his two cents in, he wrapped them first in paper before stuffing them in a then working meter; he did so for the purpose of interfering with the meter's inner mechanisms and, thereby, of putting the meter out of order. At the time, he was indifferent to whatever havoc he was then wreaking upon the meter's inner workings, to how long the meter would remain out of order, and to the repair measures that would be necessary to fix what he had wrought. The probable consequence of the defendant's intentional act was precisely what occurred: the meter stopped working entirely. The total impairment of function was substantial harm in the circumstances, notwithstanding its duration. That the injury thus caused was short-lived and easy to fix was "a matter of luck which is irrelevant to the question of [his] conduct." *Commonwealth* v. *Ruddock*, 25 Mass. App. Ct. at 513.

We are satisfied that the evidence was adequate to establish both injury and wanton conduct. Our conclusion that the evidence was sufficient to warrant the defendant's misdemeanor conviction is buttressed by *Commonwealth* v. *Ruddock, supra.* There, the evidence was sufficient to establish the crime when a student demonstrator, megaphone in hand, ran pell-mell over the hood of a late model car, despite causing only $270 in damage that took but two hours to repair. In the circumstances, such harm was substantial. There, as here, when the defendant acted, he was indifferent to or disregarded the probable consequence that his act would result in substantial injury.

*Judgment affirmed.*